

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Alton C. Arnold
County Attorney
Brazoria County
Angleton, Texas

Dear Sir:                    Opinion No. O-6441

                Re:    Under the facts submitted
                     does the Commissioners'
                     Court of Brazoria County
                     have the authority to ap-
                     propriate money from the
                     County Funds for the con-
                     struction of a branch
                     library? And related
                     question.

        We acknowledge receipt of your request for an
opinion on the above matters, said request being as fol-
lows:

        "The following question has been pre-
sented to me by the Commissioners' Court
of Brazoria County, but having found no
statute that applies I am wondering if you
will be so kind as to give me the assistance
of your office.

        "Brazoria County, some years ago, estab-
lished a County Library, which has developed
into a rather large unit with branch units at
different points throughout the county. One
of these branch libraries is located in Alvin,
Texas, an incorporated town in Brazoria County.
Considerable interest has been shown by the
people of Alvin so that the branch of the
library located there has become one of the
most important in the library organization.
Up to this time a make-shift building, which
is entirely inadequate to house this unit,
has been used for library purposes at Alvin.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Alton C. Arnold,   page 2

"Do the general powers granted the Commissioners' Court by the statutes go so far as to allow the Court to appropriate money from the County Funds for the construction of a branch library building when such building is needed in connection with the library service in an incorporated town other than the County Seat? The proposed building will cost in the neighborhood of two or three thousand dollars.

"If the Court has the authority to construct such a building from County Funds, is there a limit in the amount of money that may be expended upon such a building?

"I would also like to know whether or not the appropriations may be made from the Ad Valorem Fund or from some other county fund."

Article 1677, Vernon's Annotated Civil Statutes, provides as follows:

"The commissioners court of any county may establish, maintain, and operate within their respective counties, county free libraries in the manner and with the functions prescribed in this title.  The said court shall also have the power and authority to establish in co-operation with another county or counties a joint free county library for the benefit of the co-operative counties."

Art. 1678 of said statutes is as follows:

"The commissioners' court of any county may establish county free libraries for that part of such county lying outside of the incorporated cities and towns already maintaining free public libraries and for such additional parts of such counties as may elect to become a part of or to participate in such county free library system. On their own initiative, or when petitioned to do so by a majority of the voters of that part of the county to be affected, said court shall proceed to establish and provide for the maintenance of such library according to the further provisions of this title.  The county library shall be located at the county seat in the court house, unless more suitable quarters are available."

Hon. Alton C. Arnold,   page 3

Art. 1685 of said statutes is as follows:

"The librarian shall endeavor to give an equal
and complete service to all parts of the county
through branch libraries and deposit stations in
schools and other locations where suitable quarters
may be obtained, thus distributing printed matter,
books, and other educational matter as quickly as
circumstances will permit.  The county librarian
shall have the power to make rules and regulations
for the county free library, to establish branches
and stations throughout the county, to determine
the number and kind of employees of such library,
and, with the approval of the commissioners' court,
to appoint and dismiss such employees.  The county
librarian shall, subject to the general rules
adopted by the commissioners' court, build up and
manage according to accepted rules of library man-
agement, a library for the people of the county
and shall determine what books and other library
equipment shall be purchased."

Art. 1687 of said statutes is in part as follows:

"The county library shall be under the general
supervision of the commissioners court."

Art. 5, Sec. 18, of the Constitution of Texas, provides
in part as follows:

". . .The county commissioners so chosen, with
the county judge, as presiding officer, shall com-
pose the county commissioners' court, which shall
exercise such powers and  jurisdiction over all
county business, as is conferred by this Consti-
tution and the laws of the state, or as may here-
after be prescribed."

The above quoted provision of the Constitution of Texas
has been construed to mean that the commissioners' court is a
court of limited jurisdiction and has no authority except such
as is expressly or impliedly given under the Constitution and
the statutes.  Bland v. Orr, 39 S. W. 558; Ex Parte Thomas,
2 S. W. (2d) 270; Madison County v. Wallace, 15 S. W. (2d) 535.

This rule is also stated in 11 Tex. Jur., Secs. 37 and
38, pp 564-566, as follows:

Hon. Alton C. Arnold,  page 4

> "Commissioners' courts are courts of limited
> jurisdiction, in that their authority extends
> only to matters pertaining to the general welfare
> of their respective counties and that their powers
> are only those expressly or impliedly conferred
> upon them by law, - that is, by the constitution
> and statutes of the state.

> "The jurisdiction of commissioners' courts is
> limited to strictly 'county business,' and the
> legislature has no authority to enlarge their
> powers or jurisdiction.  Any attempt to confer
> upon the court jurisdiction of a matter which is
> not 'county business' is void.  However, the county
> commissioners' court is the active governing body
> of the county, with a jurisdiction that touches
> in some respect almost every feature of the county's
> business, and the court has full and general charge
> of the business affairs of the county.  The power
> of the court extends only to such business as is
> entrusted to it by the constitution or by the
> legislature; and the legislature may, if it
> chooses, commit a matter of county business to
> some agency other than the commissioners' court.
> The term 'county business' should be given a
> broad and liberal construction so as not to
> defeat the purposes of the law.  And it is
> held that the commissioners' courts have im-
> plied authority to do what may be necessary in
> the exercise of the duties or powers conferred
> upon them."

Art. 2351 of V. A. C. S. provides in part as follows:

> "Each Commissioners' Court shall:

> ". . .

> "7.  Provide and keep in repair courthouses,
> jails and all necessary public buildings."

There can be no question but that, under the authority
of the above quoted statutes, (Arts. 1677, 1678, 1685 and
1687) the commissioners' court can establish a county free
library at the county seat in the courthouse, unless more
suitable quarters are available.  It is also clear that the
county librarian, under the general supervision of the com-
missioners' court, is authorized to establish branches and

Hon. Alton C. Arnold,  page 5

stations of said library throughout the county.  It is pro-
vided in Art. 1685 that such branch libraries and stations
are to be established in schools and other locations where
suitable quarters may be obtained, which, in our opinion,
would include buildings constructed by the commissioners'
court for such purpose, if the construction of such build-
ing became necessary, as a building constructed for a branch
library is such public building as is referred to in the
above quotation from Art. 2351 and such as comes within the
generally accepted definitions of "public buildings", as
set out in 34 Tex. Jur., Sec. 2, p 2:

> "'Public buildings' is a term ordinarily
> used to designate such structures as the capitol
> in the capitol grounds at Austin, including the
> executive mansion, the various state asylums,
> college or university buildings erected by the
> State, courthouses and jails and other buildings
> held for public use by any department or branch
> of government, state, county or municipal.  But
> the words may have a broader or narrower meaning;
> the statute to be construed and the facts of the
> particular case will be examined in order to de-
> termine whether a particular building is a public
> one in the circumstances presented."

34 Tex. Jur., Sec. 8, p 7 further defines a public
building as follows:

> "The terms 'public building' and 'public
> grounds,' within the meaning of these penal
> statutes have already been defined (Sec. 2).
> But according to the statute, 'The specific
> enumeration. . . shall not exclude other
> buildings not named, properly coming within
> the meaning and description of a public build-
> ing.'  The buildings named - as, for example,
> county jails - are in terms designated 'public
> buildings.'  And any other building would seem
> to come within this definition provided it is
> properly shown that it is owned or controlled
> and held by public authorities for public use."

Hon. Alton C. Arnold,   page 6

There is no question but that a branch library build-
ing is a "public building" under said statutes and rules,
therefore, the only question is whether or not it is a "neces-
sary" public building. A "necessary public building" is one
that is essential for the particular purpose involved, which,
in this instance, would be for the purpose of a branch of a
county free library. If the commissioners' court is of the
opinion that a building for the branch library referred to is
"necessary" under these rules, then it is our opinion that it
has the power to construct such building.

Art. 8, Sec. 9 of the Constitution of Texas, is as
follows:

>        "The State tax on property exclusive of
> the tax necessary to pay the public debt, and
> of the taxes provided for the benefit of the
> public free schools, shall never exceed thirty-
> five cents on the one hundred dollars valuation;
> and no county, city or town shall levy more than
> twenty-five cents for city or county purposes,
> and not exceeding fifteen cents for roads and
> bridges, and not exceeding fifteen cents to pay
> jurors, on the one hundred dollars valuation,
> except for the payment of debts incurred prior
> to the adoption of the amendment September 25th,
> 1883; and for the erection of public buildings,
> streets, sewers, water works and other perman-
> ent improvements, not to exceed twenty-five
> cents on the one hundred dollars valuation, in
> any one year, and except as is in this Consti-
> tution otherwise provided; and the Legislature
> may also authorize an additional annual ad
> valorem tax to be levied and collected for the
> further maintenance of the public roads; pro-
> vided, that a majority of the qualified property
> tax-paying voters of the county voting at an
> election to be held for that purpose shall vote
> such tax, not to exceed fifteen cents on the one
> hundred dollars valuation of the property subject
> to taxation in such county. And the Legislature
> may pass local laws for the maintenance of the
> public roads and highways, without the local
> notice required for special or local laws."

Hon. Alton C. Arnold, page 7

Art. 2352, V. A. C. S., is as follows:

"Said court shall have the power to levy
and collect a tax for county purposes, not to
exceed twenty-five cents on the one hundred
dollars valuation, and a tax not to exceed
fifteen cents on the one hundred dollars valu-
ation to supplement the jury fund of the county,
and not to exceed fifteen cents for roads and
bridges on the one hundred dollars valuation,
except for the payment of debts incurred prior
to the adoption of the amendment of the Consti-
tution, September 25, A. D. 1883, and for the
erection of public buildings, streets, sewers,
water works and other permanent improvements,
not to exceed twenty-five cents on the one
hundred dollars valuation in any one year, and
except as in the Constitution otherwise provided.
They may levy an additional tax for road pur-
poses not to exceed fifteen cents on the one
hundred dollar valuation of the property
subject to taxation, under the limitations and
in the manner provided for in Article 8, Sec. 9,
of the Constitution and in pursuance of the
laws relating thereto."

The last above quoted provisions of the Constitution
of Texas and of the statute referred to authorize the Commis-
sioners' Court to levy taxes for the erection of public build-
ings, streets, sewers, water works, and other permanent im-
provements not to exceed twenty-five cents on the one hundred
dollars valuation, the fund created thereby being generally
referred to as the Permanent Improvement Fund. You are
advised, therefore, that if the commissioners' court is of
the opinion a building should be constructed for the branch
library referred to, it has the power to levy a tax as a
part of the Permanent Improvement Fund in order to secure
funds with which to do so, said levy to be a part of the
twenty-five cents on the one hundred dollars valuation au-
thorized by Art. 8, Sec. 9 of the Constitution and Art. 2352
of the Civil Statutes; or, if there should be on hand any
funds in said Permanent Improvement Fund that have been levied
and collected without having been specified for any particular
permanent improvement, then the commissioners' court has the
authority to use such funds in the construction of such build-
ing. Such building cannot be paid for from any county funds
other than the Permanent Improvement Fund, and the amount that
can be so used is within the discretion of the commissioners'
court. The right to construct such building, however, is
further limited by the provisions of the county budget law
as follows:

Art. 689a-9, V. A. C. S., provides for the making of the county budget, and Art. 689a-11 provides that no expenditures of the funds of the county shall thereafter be made except in strict compliance with the budget as adopted by the court. It is further provided that emergency expenditures, in case of grave public necessity, to meet unusual and unforeseen conditions which could not, by reasonably diligent thought and attention, have been included in the original budget may from time to time be authorized by the court as amendments to the original budget. Therefore, it is our opinion that, even if there are funds on hand in the Permanent Improvement Fund which could be used to construct such building under the rules of law hereinabove referred to, such funds cannot now be used for the construction of said building, unless same were included in the county budget, or there now exists the grave public necessity above defined, authorizing the county budget to be amended so as to include funds for said building, which is for the determination of the commissioners' court. In the event it becomes necessary to levy a tax for the purpose of constructing said building, said item should be included in the county budget.

We trust that this satisfactorily answers your inquiry.

APPROVED MAY 18, 1945

ATTORNEY GENERAL OF TEXAS

JWB:LJ

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By Jas. W. Bassett
Jas. W. Bassett
Assistant

APPROVED
OPINION
COMMITTEE
BY R.L.L.
CHAIRMAN